UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK W. MEEKS,<br><br>        Plaintiff,<br><br>    v.<br><br>JO ANNE BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendants.<br>_____/ | No. C 05-4023   JL<br><br>**SUMMARY JUDGMENT**<br>**(Denying Docket # 9,**<br>**Granting Docket # 10)** |

**Introduction**

Plaintiff Kirk W. Meeks appeals from denial of his application for Social Security disability benefits. This Court has jurisdiction over this case pursuant to 42 U.S.C. §401-33 and 42 U.S.C. §1381-83. The parties consented to jurisdiction as provided by 28 U.S.C. §636(c) and Civil Local Rule 73. The parties filed cross-motions for summary judgment. Attorney for Plaintiff is Barbara M. Rizzo, Esq. Attorney for the Commissioner is Sara Winslow, Assistant U.S. Attorney. The matter was submitted without oral argument as provided by Civil Local Rule 7-1(b). The Court considered the moving and opposing papers and the Statement of Recent Decisions submitted by Meeks. The Court finds that Meeks satisfied Civil Local Rule 7-3(d) in that the decisions he submits were after this matter was taken under submission by this Court.

This Court hereby affirms the decision of the Administrative Law Judge ("ALJ") in all respects. The Court finds that Administrative Law Judge Robert Wenton correctly found that Meeks could not meet his burden to show a physical impairment of sufficient severity and duration to constitute a disability under the applicable regulations. The ALJ also correctly found that Meeks' mental impairment of borderline intellectual functioning, even though severe did not prevent him from performing his past relevant work or other simple work at a light exertional level. The ALJ appropriately considered Meeks' testimony and his brother-in-law's testimony regarding his symptoms. On the record before this Court Meeks' contentions do not merit remand for further development of the record or an award of benefits. Accordingly, summary judgment is granted for the Commissioner and denied for Meeks.

**Factual Background**

Kirk W. Meeks, a former handyman and ranch hand, was found to have the capability to perform a range of simple entry-level work at a light exertion level.  The ALJ rejected Meeks' claims of disability due to chronic leg and back pain and denied his application for Supplemental Security Income and disability insurance.

Meeks was born in 1956.  He completed high school, but has elementary school level reading and language skills.  Administrative Record ("A.R.") at 20.  He lived and worked as a ranch hand in Castro Valley, California for more than 30 years.  A.R. at 183. In 1996, he was helping to unload hay from a truck and fell approximately 26 feet to the ground, injuring his head.  A.R. at 182.  He was in the hospital for six weeks, having suffered "bilateral frontal and temporal lobe contusions," "non-displaced fracture of the right humerus surgical neck," and "right basilar skull fracture." He was also diagnosed with "probable old compression fracture of T-12 (stable)." (AR 164). Upon discharge, Dr. Steinberg noted that Meeks was "improving" (*Id.*). After discharge from the hospital Meeks took several more months to recuperate.  A.R. at 183.  Afterward, he tried to continue working at the ranch, but found it too difficult, primarily due to fatigue.  *Id.*  Meeks' other work experience has

been general repairs and running errands for a women's shelter. (A.R. at 81). He also tried to continue this work after his accident, but was not able to. (A.R. at 179).

Meeks has not worked since December 1, 2001. He states that he cannot work due to chronic back and leg pain, fatigue, lack of mobility and difficulties with concentration, memory and following instructions. (A.R. at 179-180) Plaintiff motion at 2:7-10. He has difficulty remaining either in a standing or sitting position for more than 20 minutes and can no longer ride his horse. (A.R. at 192) Plaintiff motion at 5:16-20. He has little medical documentation because neither he nor the family members who assist him can afford regular doctors' appointments. (A.R. at 189). After seeking free care at the local public hospital, they have given up after long and frustrating waits. *Id.*

**Procedural Background**

Meeks applied for disability and disability insurance payments on July 14, 2003, seeking benefits dating to December 1, 2001. (A.R. at 168). The Social Security Administration ("SSA") denied his application both initially and on reconsideration. (A.R. at 172-173). Meeks applied for a hearing, which took place on November 8, 2004. (A.R. at 16). At the hearing, he was represented by an attorney. His brother-in-law, James Percival, attended and testified. (A.R. at 176). The ALJ issued his opinion finding Meeks "not disabled" on March 16, 2005.

The ALJ concluded:

"I thus find, taking into consideration all of the evidence of record, including the claimant's allegations of pain and other symptoms and the testimony of his brother-in-law, that the claimant is able to perform a wide range of simple entry level light work. With such a residual functional capacity, the claimant can perform his past work as a handyman at an emergency shelter, work which he testified involved light exertional demands (hearing testimony). 20 C.F.R. 404.1520(f) (A.R. at 20)

Meeks filed a timely complaint with the U.S. District Court for the Northern District of California on October 5, 2005. He later filed a motion for summary judgment or remand, and the SSA filed a cross-motion for summary judgment.

**Legal Argument and Analysis**

Standard of Review: The Commissioner's decision must be affirmed upon review if it was supported by substantial evidence and based on proper legal standards. 42 U.S.C. section 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997) (citations omitted). " Where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The claimant carries the burden of proving disability. *See Ukolov*, 420 F.3d at 1004; *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) ("At all times, the burden is on the claimant to establish . . . entitlement to disability insurance benefits" (*Id.*)(citations omitted). "Failure to prove disability justifies a denial of benefits." *Ukolov*, 420 F.3d at 1004. To be affirmed, the ALJ's decision must be supported by "substantial evidence in the record as a whole," *e.g. Thomas v Barnhart*, 278 F 3d 947, 954 (9th Cir 2002). If it is not, the case is remanded to the agency for either further proceedings or an award of benefits.

The five-step analysis for determining disability eligibility per regulations at 20 CFR § 404.1520; 20 CFR § 416.920, is as follows:

1. In step one, the ALJ considers whether the claimant is currently employed in substantial gainful activity.

2. If not, in step two the ALJ decides whether the claimant has a severe impairment.

3. In step three, the ALJ determines whether the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Part 404 of the Regulations, Subpart P, Appendix 1 (after § 404.1599) . 20 CFR § 404.1520. The Part 404 Listings are used in processing DIB claims also (see 20 CFR § 416.920(a)(4)(iii)).

4. If the claimant does not have such a condition, in step four the ALJ asks whether the claimant can perform his past relevant work.

5.  If not, in step five, the ALJ considers whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy.  42 U.S.C. § 1382c(a)(3)(B); 20 CFR §§ 404.1520(b)-(f); §§ 404.920(b)-(f). § 416.920, 416.960.

Meeks argues that the ALJ made multiple errors of law as he performed the five-step analysis of Social Security eligibility determinations.

1) The ALJ found that "there is no evidence that claimant has engaged in any substantial gainful activity since December 1, 2001. . ."

There is no dispute as to this step of the analysis.

2) Does Meeks have a severe impairment that has lasted or can be expected to last 12 months? This question is in dispute. The ALJ concluded that Meeks failed in part at Step Two of the five-part sequential analysis because he could not document a severe physical impairment, although the ALJ acknowledged that Meeks has a severe mental impairment, "borderline intellectual functioning." The ALJ based his conclusion that Meeks could not demonstrate a severe physical impairment on a number of factors.

The ALJ observed that Meeks alleged disabling back and leg pain. However, the statutory definition of disability requires the existence of a medically determinable impairment and, according to the regulations, such an impairment "... must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See*, 1614(a)(3)(A) of the Social Security Act, as amended, and 20 C.F.R. 416.908.

Symptoms alone cannot prove a disability. The burden is on the claimant "to produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991), quoting *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). *See also*, Social Security Ruling 96-7p. The ALJ found that Meeks failed to carry his burden, because he never saw a physician or received any medical treatment which could have established a record of his medical condition between 1996, when he was injured, and 2003, when he applied for benefits.

In 2003, the SSA examining physician, Dr. Pon, examined Meeks but found no significant positive objective findings of disability. (A.R. at 114-116). Consequently, Meeks can show no anatomic or physiological abnormalities as demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," that is, no medically determinable physical impairment which has more than a minimal effect on Meeks' ability to perform basic work activities. 20 C.F.R. 404.1520(c).

Meeks in his application for benefits stated he took no medication, even non-prescription over-the-counter medication, for his supposedly disabling leg and back pain. Nor had he received any treatment for the leg and back pain since 1996, immediately after the fall which caused the injury which caused the pain. The medical record of his injury and the treatment for it are at (A.R. 164-167).  He had an old fracture at T-12 which is documented in the A.R. at 157 and 164, including a report of an x-ray at A.R. 157. Meeks testified at the hearing that pain wakes him up at night and he takes aspirin and ibuprofen. (A.R. at 192). He testified he hasn't seen a doctor since 1996 because he gets exhausted waiting at the county hospital and leaves before receiving treatment. (A.R. at 186-189).

**Plaintiff's Allegations of Error by the ALJ**

The Court considers Meeks' arguments that the ALJ erred in finding Meeks failed to show a severe physical impairment.

*A. Did the ALJ improperly reject the opinions of Dr. Joel Steinberg, Meeks' treating physician?*

When Dr. Joel Steinberg discharged Meeks from Kaiser Permanente Medical Center on August 15, 1996, after treatment for the injuries from his fall, he wrote that Meeks should take Tylenol and "[t]o take it real easy. Not to do any kind of work.  Not to drive a car.  Right arm in a sling.  The patient does not need to wear a back brace." (A.R. at 164) (emphasis added). The last time Dr. Steinberg saw Meeks was in 1996, on his discharge from the hospital, approximately seven years prior to his application for benefits. At the time of discharge, Dr. Steinberg noted that Meeks was "improving." (A.R. at 164)

In October 2003, Dr. Calvin Pon examined Meeks at the request of the SSA. Dr. Pon noted that Meeks has no problems standing or walking, and can sit for one-half to one hour, that he is able to walk up and down stairs and doesn't use a cane. Meeks can dress himself, cook, eat, tend to his personal hygiene, do housework, go grocery shopping and drive a car, in fact having driven himself to his appointment with Dr. Pon. Meeks had full range of motion, was able to bend, squat and stand erect, and flex his trunk and thoracolumbar spine to 60 degrees, limited by low back pain. His hands, hips, knees and shoulders had full range of motion. He had no problems with his vision, hearing or speech.

Dr. Pon concluded that Meeks had no limitation on standing or walking and could sit for one-half to one hour during an eight hour workday alternating with standing or walking for a total of six hours during an eight-hour workday. Stooping should be limited to occasionally. Dr. Pon found that Meeks could crouch, crawl, kneel, squat and climb ladders or stairs. Dr. Pon further found that Meeks could lift 15 pounds frequently and 25 pounds occasionally. He concluded Meeks had scoliosis, an excessive curvature of his spine, and chronic mid- and lower back pain. (A.R. at 114-116). The ALJ found that Dr. Pon's exam resulted in "no significant positive objective findings" of disability. (A.R. at 18).

Meeks argues that the ALJ rejected Dr. Steinberg's opinion from 1996 and erred in not giving specific and legitimate reasons for doing so. The SSA argues that the 1996 instructions were old and Meeks never followed up with other medical treatment for his leg and back pain. Further, any disability he suffered in 1996 did not meet the 12-month duration requirement at 42 U.S.C. section 423(d)(1(A) when he applied for benefits in 2003, and any allegation of ongoing disability was contradicted by Dr. Pon's conclusion that Meeks was not disabled. Meeks counters that the ALJ did not give specific reasons for rejecting Dr. Steinberg's opinion. He also argues that his inability to afford ongoing medical care should not disqualify him from receiving benefits.

At the hearing in this case, Percival, Meeks' brother-in-law, testified that he did not have the money to take Meeks to the doctor. (A.R. at at 189). Meeks testified that he was uncomfortable taking non-prescription medication regularly, but did so occasionally. (A.R. at 192). He had previously told the SSA he could not afford medical treatment. (A.R. at

101). He knew that free treatment was available at the nearest public hospital, but when he and his family members went they gave up and left after long and frustrating waits there. (A.R. at 189).

The court cannot affirm an administrative decision based on reasons the ALJ does not articulate. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Generally, the opinion of a treating physician is given more weight than that of an examining or consulting physician, and the ALJ must set forth specific, legitimate reasons, based on substantial evidence in the record, if he favors a conflicting opinion by an examining or consulting physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983 ).

Meeks is correct that the ALJ made no mention of the 12-month duration in his discussion of Dr. Steinberg's opinion. However, the ALJ did not reject Dr. Steinberg's opinion merely due to a conflicting opinion from Dr. Pon. He noted the 1996 accident and Meeks' resulting injuries, but found the lapse in time and the lack of recent, conclusive diagnoses to be convincing. Dr. Steinberg's instructions were to not work or drive, and Meeks has since resumed driving, and was briefly working following his discharge from the hospital. (A.R. at 182). Dr. Steinberg did not indicate a time period during which Meeks should not work or drive. In short, Dr. Steinberg's discharge report does not lead to an unavoidable conclusion that Meeks continued to be disabled at the time of discharge, and the record substantially supports the ALJ's conclusion that Meeks did not have a severe physical impairment.

A "non-severe impairment" is one which does not significantly limit one's capacity to perform basic work-related functions. *See* 20 C.F.R. sections 404.1521 and 416.921. Examples of such basic work activities include physical functions such as walking and standing; the ability to see, hear and speak; to understand, remember and carry out simple instructions; to use judgment, respond appropriately to supervisors, co-workers and usual work situations; and to deal with changes in a work setting. *Id.*

A claimant cannot be denied benefits on the basis of his not seeking medical care or not taking medication, if he has a legitimate reason, such as financial difficulties, which prevent him from doing so. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In that

case, the district court reversed the ALJ's denial of benefits. The claimant presented evidence that her treatment for childhood cancer had left her with physical problems which led to her being disabled by back pain as an adult. Smolen produced uncontradicted objective medical evidence of the following physical impairments during the relevant period: (1) loss of one kidney; (2) loss of part of her left lung; (3) mild anemia; (4) suppression of her bone marrow production (as evidenced by anemia); (5) changes in her left lung tissue; and (6) spinal scoliosis. *Id.* at 1282.

The court reversed the ALJ's decision to deny benefits which he justified partially because the claimant was not taking pain medication. *Id.* at 1284  However, in contrast to Meeks, Smolen produced uncontroverted, objective medical evidence of impairments, medical opinions substantiating her subjective testimony of pain symptoms and "other" credible evidence supporting her claim. *Id.* at 1283-1284.  Her failure to take medication could not alone be a clear and convincing reason to discredit her testimony, in the face of all the other evidence she produced. *Id.*

Unlike Smolen, Meeks presented no medical testimony, no test results, no objective clinical findings, except his records from the accident in 1996. Also unlike Smolen, he offered no medical evidence that the injury he suffered then would be expected to cause the symptoms he claimed to be experiencing when he applied for benefits seven years later. His situation is not comparable to Smolen's, and the ALJ was justified in finding that he failed the *Cotton* test, as discussed in more detail below.

*B. Did the ALJ have adequate evidence for his conclusion that Meeks does not have a severe physical impairment?*

Under the second step of his analysis, the ALJ decides whether the claimant has a severe physical impairment involving "anatomical, physiological, or psychological abnormalities," which can be shown through objective medical diagnoses and which impairs his ability to work.  20 C.F. R.  416.908.  Subjective testimony describing pain, fatigue or other symptoms is acceptable, but the claimant bears the burden of showing that the pain is the result of a medical impairment that could be reasonably expected to create such pain.  *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). The "Cotton test" is a *de*

*minimis* threshold, designed to prevent baseless claims. *Smolen v. Chater*, 80 F.3d at 1290.

Turning to his physical ailments, Meeks argues that the ALJ made two errors. He based his decision partially on Meeks' not receiving medical care over a period of almost eight years for his allegedly disabling physical impairment and on his not taking medication.

Meeks reiterates his argument that he cannot be denied benefits where he has a legitimate reason for not seeking care. He also points to his testimony that he occasionally takes aspirin or ibuprofen, but tries to keep his use to a minimum. (A.R. at 192.) The ALJ ultimately held that Meeks had not met his burden under the *Cotton* test of showing physical impairment through "medically acceptable clinical and laboratory diagnostic techniques." *Id.* Merely repeating the symptoms which Meeks allegedly suffers from does not meet the *de minimis* standard for documenting a severe physical impairment, absent some objective medical evidence supporting his case. Had the ALJ ignored symptom testimony and medical evidence, he would have erred, but on the sparse medical history before him, he did not. The ALJ's ultimate finding is supported by substantial evidence.

*C. Was the ALJ's rejection of Meeks' and Percival's credibility proper?*

In considering Meeks' and Percival's credibility, the ALJ noted:

At the hearing I took testimony from the claimant and the witnesses, I engaged in extensive questioning about the claimant's activities of daily living and social functioning and inquired fully into the claimant's alleged limitations and restrictions which arise from the impairments claimed. I observed the claimant's ability to understand my questions and to respond appropriately to those questions. I observed the claimant's ability to remain focused on the purposes of the hearing and the intention of the questions asked. I observed the claimant's ability tor respond promptly to those questions. I observed the claimant's ability to remain in one place throughout the hearing and to devote attention to the issues raised rather than to intervening factors arising from the alleged impairments. The hearing lasted about an hour, and during that time I had extensive interaction with the claimant and was able to draw some conclusions about the claimant's ability to function.

The one-hour hearing is an extremely valuable tool. Nowhere else in the disability adjudication process does the decision maker have an opportunity to confront the claimant and to discuss extensively the nature of the impairments claimed and the impact of those impairments on the claimant's life. As an attorney withe experience over a period of thirty years in the presentation of and adjudication of Social Security disability claims (including 10 years as an Administrative Law Judge), I rely heavily on all the information I obtain during hearings in my assessment of the credibility of evidence and the appropriate weight to be given to each piece of evidence in the final decision.

(A.R. at 19) *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (personal observations of ALJ not improperly included so long as ALJ provides specific and legitimate reasons).

The court must defer to an ALJ's finding that a claimant's non-medical evidence of symptoms is unconvincing or his testimony not credible, if there is substantial evidence in the record to support that finding. *Bunnell v. Sullivan*, 947 F.2d 341, 345- 346 (9th Cir. 1991) (*en banc*). Here, the ALJ's determination that Meeks' testimony was not credible is based on Meeks' not receiving medical care, on Meeks' statement that he does not take pain medication, on his ability to complete household chores, and his statement to an examining psychologist that he was looking for work. (A.R. at 111) [1] As discussed above, there is evidence in the record that Meeks occasionally takes non-prescription pain medication. He argues that the cost and inconvenience of medical treatment preclude him from visiting the doctor. These facts alone, without supporting medical evidence, do not satisfy the *Cotton* test.

The Court finds that the ALJ adequately considered and evaluated the evidence of his subjective symptoms which Meeks presented at the hearing. The ALJ expressly stated in his findings that he considered the testimony Meeks and his brother-in-law in making his decision:

> "I thus find, taking into consideration all of the evidence of record, including the claimant's allegations of pain and other symptoms and the testimony of his brother-in-law, that the claimant is able to perform a wide range of simple entry level light work. With such a residual functional capacity, the claimant can perform his past work as a handyman at an emergency shelter, work which he testified involved light exertional demands (hearing testimony)." (A.R. at 20)

An ALJ may find a claimant's evidence of disability not credible based partially on personal observations at the hearing, so long as it is supported by evidence in the record. *Bowen*, 885 F.2d 597 at 803 (9th Cir. 1989). The ALJ noted *inter alia* that Meeks was able to sit through the hour-long hearing. This is not inconsistent with Dr. Pon's recommendation

---

[1] In his evaluation of Meeks, psychologist Dr. Ahmed El-Sokarry observed that Meeks" Current Interests included "Claimant reports that he now spends most of his time looking for work."

that Meeks not sit for more than one hour during a workday.  (A.R. at  18, 114-116). This does not disqualify him from his past work as a handyman and maintenance worker. They are not jobs which require prolonged sitting, for example, at a desk.

The ALJ also observed Meek's ability to focus, concentrate and participate actively in the administrative hearing:

> I observed the claimant's ability to understand my questions and to respond appropriately to those questions. I observed the claimant's ability to remain focused on the purposes of the hearing and the intention of the questions asked. I observed the claimant's ability to respond promptly to those questions. I observed the claimant's ability to remain in one place throughout the hearing and to devote attention to the issues raised rather than to intervening factors arising from the alleged impairments. The hearing lasted about an hour, and during that time I had extensive interaction with the claimant and was able to draw some conclusions about the claimant's ability to function. (A.R. at 19)

A decision of an ALJ to deny disability benefits, in part based on rejecting lay testimony regarding Plaintiff's ability to work, will be reversed if the ALJ fails adequately to explain the basis for rejecting that testimony.

> "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Indeed, 'lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment.' Consequently, '[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.' ('Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.' (citations omitted)). Here, the ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how [Plaintiff's] impairments impact his ability to work."

*Stout v Commissioner*, 2006 U.S. App. Lexis 18578, 6-7 (9th Cir. July 25, 2006) (internal citations omitted).

The ALJ's decision contains specific reasons for rejecting Plaintiff's brother-in-law Percival's hearing testimony.  He states that Percival's testimony largely tracks that of Meeks and in fact confirmed that Meeks could take care of his own personal functions, including grooming, dressing himself and cooking. Def. mot. at 6:26-28. (A.R. at  188-190).

Examining Percival's testimony, this Court finds it a reasonable that it does not adequately support Meeks' claim. Percival testified that Meeks needed help when doing

1  mechanical repairs, like fixing brakes on a car. (A.R. at 187). However, he took care of his
2  own "necessary functions." (A.R. at 188). Meeks had been laid off from his job at the
3  emergency shelter because his capacity had diminished. (A.R. 203). Percival's testimony
4  tracked and supported Meeks' testimony, but that amounted to less than what was required
5  to establish that Meeks couldn't perform his past relevant work or simple entry level light
6  work.

*D. Did the ALJ properly determine that despite his severe impairment of borderline intellectual functioning, Meeks is able to perform his past work as a handyman?*

At the fourth step of his analysis, the ALJ must determine whether the claimant is able to perform his past relevant work, based on his residual functional capacity. 20 CFR 404.1520(f). The ALJ determined at Step 2 that Meeks did not have a medically cognizable physical impairment, but did have a severe medically determinable mental impairment. (A.R. at 17).

The examining psychologist, Dr. El-Sokkary, evaluated Meeks in September 2003 and reported findings of borderline intellectual functioning as well as poor immediate and delayed memory. Dr. El-Sokkary concluded that Meeks could perform tasks of simple to moderate difficulty, maintain a fair level of concentration, persistence and pace and interact appropriately with supervisors and co-workers in a job setting. (A.R. at 18, 109-113). These findings were similar although not identical to those of the State agency doctor, Dr. George Norbeck, who completed a Mental RFC assessment. (A.R. at 128-146). Dr. Norbeck concluded that Meeks is markedly limited in his ability to maintain attention and concentration for extended periods and had moderate difficulties in maintaining concentration, persistence, or pace (*Id.* at 128, 142). These findings do not contradict Dr. Sokarry, who found that Meeks could maintain a fair level of concentration, persistence and pace. A "fair" level could accurately describe the ability of someone with moderate difficulty maintaining those faculties, especially for extended periods of time. The type of work which the ALJ found Meeks to be able to do does not require focus and concentration for extended periods of time, as discussed below.

The ALJ found that Meeks' borderline intellectual functioning constituted a severe impairment. Meeks does not dispute this finding.

Based on Meeks' mental and physical limitations, the ALJ found that Meeks has the residual functional capacity to perform simple, light exertion work, including his past relevant work as a handyman. Meeks disagrees with the finding that his handyman position at an emergency shelter was simple and light work.

The burden of proof at step four rests on the claimant, so he must show that he cannot perform his past relevant work. *Tackett v. Apfell*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ correctly found that Meeks' severe impairment of limited intellectual functioning did not preclude him from simple or unskilled work, such as his past relevant work as a handyman at an emergency shelter, where he worked 3-4 hours a day, five days a week, doing maintenance (A.R. at 179, 193).

> (a) *Unskilled work*. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. sections 404.1568(a) and 416.968(a).

Simple or unskilled work requires little judgment and can be learned in a short period of time. 20 C.F.R. 404.1568 (a). Skilled work requires judgment, may involve dealing with people, facts, figures or complex ideas. 20 C.F.R. 404.1568(b). Meeks appears to argue that the emergency shelter work was skilled, as defined by the Dictionary of Occupational Titles. This argument is contradicted by statements made by Meeks and Percival during testimony that his part-time maintenance position at the shelter was more akin to laborer, and required few job skills. (A.R. at 179, 203). The contention is therefore without merit. His limited intellectual functioning would not interfere with his ability to perform his past relevant work.

With respect to the physical demands of his past relevant work, light work may involve lifting no more than 20 pounds at a time, with frequent lifting of 10 pounds, as well

as a good deal of walking or standing, or sitting while pushing or pulling arm or leg controls. 20 CFR 404.1567(b).  This is within the limits described by Dr. Pon after examining Meeks.  The ALJ wrote that Meeks testified his work had light exertional demands, but that inference is not supported by the hearing transcript.  During the hearing, Meeks testified that the heavy lifting required was one of the reasons he could not continue his job at the shelter.  A.R. at  179.

In his work-history reports, Meeks reported that the heaviest weight he had lifted during his job at the shelter was 50 pounds and that he "frequently" lifted 25 pounds (one-to two-thirds of the workday).  A.R. at  81.  This description in the work-history report of unloading food boxes from trucks is inconsistent with Meeks' characterization of his job as "maintenance."  (A.R. at  179) Dr. Pon's opinion was that Meeks could "occasionally" lift 25 pounds. The ALJ could reasonably find that Meeks' past relevant work and other work of which he was capable would not require him to lift more than Dr. Pon found him capable of.

The parties disagree whether the ALJ adopted the opinion of Dr. Pon as to  Meeks' contention that he is not capable of doing light exertional work.  The ALJ states that Dr. Pon would limit Meeks to one hour of sitting in an 8-hour day, alternated with standing.  A.R. at 18.  Dr. Pon's report concluded that Meeks "should be able to sit for one-half hour to an hour during an 8-hour workday alternating with standing or walking ..." (A.R. at  116).  The ALJ appears to have adopted the longer duration from the range that Dr. Pon suggested. He did not set forth reasons for adopting the longer duration, but observed that Meeks was able to sit through the one-hour hearing and it is not clear that a one-half hour limitation would have altered his decision.  Accordingly, the ALJ correctly found that Meeks could perform light exertional work.

*E. Did the ALJ err in finding  without consulting a vocational expert that Meeks could perform other work?*

In the final step of the evaluation process, the ALJ reviews the claimant's impairments, functional limitations, age, education and work experience to determine whether he can adjust to performing other work. 20 C.F.R.  404.1520(g).  The ALJ must also consider whether there is a significant number of such jobs in the national economy.

*Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The ALJ may turn to Medical-Vocational Guidelines, which use a four-factor matrix to determine the availability of employment.  *Id.* at 461.  Where the Guidelines do not account for a non-exertional limitation, the ALJ must pose hypothetical questions to a vocational expert to assess whether adequate jobs exist in the national economy.  *Tackett*, 180 F.3d at 1104.  Non-exertional limitations could include poor vision, environmental sensitivity or pain, including the need to frequently change position.  *Id.* at 1101-1102.

Relying on rule 202.17, the ALJ determined that Meeks is not disabled by his borderline intellectual functioning from performing his past relevant work or other simple light work .  Meeks argues that reliance on the Guidelines was an error, because his physical and mental limitations were not accurately represented in the broad categories of the Guidelines. The SSA counters that the limitation to simple work is dealt with under the Guidelines because unskilled work is, by definition, simple. Substantial numbers of jobs exist in the national economy at the unskilled level that someone with limited intellectual skills could perform.  20 C.F.R. Part 404, Subpart P, Appendix 2.

Meeks' limitation to simple work is adequately dealt with under the Guidelines. *See* Social Security Ruling (SSR) 85-15 ("Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily deal primarily with objects, rather than people, and they generally provide substantial vocational opportunity for persons with solely mental impairments"). This analysis would be the same under the Guidelines for both light and sedentary levels. 20 C.F.R. sections 404.1501, et seq. Appendix 2, Rule 201.18 and 202.17.

The ALJ's decision that Meeks could perform simple unskilled work at the light exertional level is supported by substantial evidence in the record. Dr. Sokarry and Dr. Norbeck found that Meeks, although limited in his ability to maintain attention and concentration for extended periods and having moderate difficulties in maintaining concentration, persistence, or pace, could still maintain a fair level of concentration, persistence and pace. The type of work which the ALJ found Meeks to be able to do does

not require focus and concentration for extended periods of time. Similarly, Dr. Pon concluded that Meeks could lift weight within the range for light exertional work.

Meeks also argues that the ALJ erred by not assessing the effect of Meeks' "combined" physical and mental disabilities. The ALJ concluded that Meeks did not have a severe physical impairment. Therefore, the only impairment to be evaluated was the mental limitation of Meeks' borderline intellectual functioning. There was no combination of disabilities at issue.

## Conclusion

Meeks could not meet his burden to show a physical impairment of sufficient severity and duration to constitute a disability under the applicable regulations. The ALJ also correctly found that Meeks' severe impairment of borderline intellectual functioning did not prevent him from performing his past relevant work or other simple work at a light exertional level. The ALJ appropriately considered Meeks' testimony and his brother-in-law's testimony regarding his symptoms. On the record before this Court, Meeks' reasons are not adequate to merit remand for either further development of the record or an award of benefits. Accordingly, summary judgment is granted for the Commissioner and denied for Meeks.

IT IS SO ORDERED.

DATED: March 23, 2007

_____
James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\05-4023\ORD-9,10.wpd